In the Matter of the Involuntary Termination of the Parent–Child Relationship of J.T., E.T, and R.T. and Their Mother, Leslie Tavorn and the Legal Father of R.T., Stanley Tavorn, and the Alleged Father of R.T., Earl Carpure, Appellants–Respondents,

v.

MARION COUNTY OFFICE OF FAMILY AND CHILDREN, Appellee–Petitioner.

No. 49A02–0007–JV–448.

Court of Appeals of Indiana.

Dec. 29, 2000.

Rehearing Denied Feb. 13, 2001.

Elizabeth Gamboa, Indianapolis, Indiana, Attorney for Appellants.

Jacquelyn F. Moore, Marion County Office of Family and Children, Loretta A. Oleksy, Child Advocates, Inc., Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge

Stanley Tavorn appeals the involuntary termination of his parental relationships with his minor sons, J.T., E.T., and R.T. He raises two issues for review:

1. Was Stanley denied due process of law because the trial court did not secure his presence at the termination hearing?

2. Did Stanley receive ineffective assistance of counsel?

We affirm.

Stanley and Leslie Tavorn were married from 1982 to 1992. Their sons, J.T., E.T., and R.T., are the subjects of this case. At some point, Leslie moved to Indiana. In 1995, Stanley was convicted in Florida of aggravated battery with intent to harm; in 1996, he was convicted of aggravated battery with a deadly weapon. Stanley remains incarcerated in Florida with a current release date of August 24, 2023.

On December 24, 1996, Leslie left the children alone, telling them she was going to get gas. When Leslie had not returned the next day, the Marion County Office of Family and Children [OFC] removed all three children from her home. The children were subsequently placed in therapeutic foster care.

The OFC filed a Petition Alleging Children in Need of Services [CHINS]. Counsel was appointed for Stanley. At the CHINS pretrial hearing, counsel requested permission to withdraw because Stanley had "not responded to any of her correspondence." *Record* at 153. The trial court denied the request. After a fact-finding hearing, the trial court found J.T., E.T., and R.T. to be CHINS.

On August 31, 1998, the OFC filed a petition for involuntary termination of the parent-child relationships. Stanley was served on October 13, 1999, and filed a pro se motion to enlarge. On October 28, 1999, the court entered a denial for Stanley and appointed counsel to represent him. Leslie voluntarily terminated her parental rights, and the hearing on the OFC's petition occurred on March 7, 2000.

Stanley was represented by counsel at the hearing, but was not physically present.

Evidence introduced by the OFC showed that the children had resided with the same foster parents since February or March of 1997. Initially, E.T. had exhibited behavioral problems, but all three boys were progressing satisfactorily at the time of the hearing. Stanley had not contacted the children or supported them since they had been placed in the foster care. The foster parents wished to adopt the children. Stanley's counsel explained that he had talked to Stanley about a post-adoption contact agreement that would provide an opportunity for Stanley to visit his children. Counsel also introduced Stanley's statement that he had "no intention of signing any adoption papers now or in the future." *Record* at 166.

After the hearing, on March 20, 2000, Stanley filed a pro se Motion to Suppress Evidence in False Representation. On March 28, 2000, he filed a pro se Motion of Discovery. The court denied both motions and ordered Stanley's parental rights terminated as of March 30, 2000. This appeal followed.

### 1.

Stanley first contends that he was denied due process because the court did not secure his physical presence at the hearing on the OFC's petition to terminate the parent-child relationships.[1] Stanley points out that, pursuant to Indiana Code § 31–32–2–3(b), a parent in proceedings to terminate the parent-child relationship is specifically entitled to (1) cross-examine witnesses, (2) obtain witnesses or tangible evidence by compulsory process, and (3) introduce evidence on behalf of the parent. He insists that those statutory rights in-

---

1. In his reply brief, Stanley insists that he was denied due process because alternative methods of securing his participation were not employed. Specifically, he suggests that he could either have testified by telephone or submitted evidence by affidavit. That argument is considerably broader than the issue statement in the Brief of Appellant, wherein Stanley claims that he was denied due process only because he was physically absent from the termination hearing. Stanley may not present a new theory of appeal in a reply brief. *See Ward v. State,* 567 N.E.2d 85 (Ind. 1991). Moreover, Stanley did not request that an alternative procedure be instituted.

clude the right to be present at the hearing to assist counsel.

■■■ When a State seeks to terminate the parent-child relationship, it must do so in a manner that meets the requirements of the due process clause. *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). Although due process has never been precisely defined, the phrase embodies a requirement of "fundamental fairness." *E.P. v. Marion County Office of Family & Children*, 653 N.E.2d 1026, 1031 (Ind.Ct.App.1995) (quoting *Lassiter v. Dep't of Social Servs.*, 452 U.S. 18, 26, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981)). Citing *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), this court has recently acknowledged that the nature of the process due in parental rights termination proceedings turns on a balancing of three factors: (1) the private interests affected by the proceeding, (2) the risk of error created by the State's chosen procedure, and (3) the countervailing governmental interest supporting use of the challenged procedure. *A.P. v. Porter County Office of Family and Children*, 734 N.E.2d 1107 (Ind.Ct.App.2000).

The private interests implicated in this case are substantial. Specifically, the action involves a parent's interest in the care, custody, and control of his children, "perhaps the oldest of the fundamental liberty interests" recognized by the United States Supreme Court. *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49 (2000).[2] This court has stated that the parent-child relationship is "one of the most valued relationships in our culture." *In re D.L.M.*, 725 N.E.2d 981, 983 (Ind.Ct.App.2000). Accordingly, a parent's interest in the accuracy and justice of the decision is "a commanding one." *Lassiter v. Dep't of Social Servs.*, 452 U.S. 18, 27, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981).

The second *Mathews* factor requires an assessment of the risk of proceeding with-

out Stanley's physical presence. Here, Stanley was represented by counsel, who was available to cross-examine witnesses and to introduce evidence in defense of the action. Under these circumstances, the risk of an inaccurate result decreases significantly.

The final factor is the countervailing government interest. The State has a significant *parens patriae* interest in protecting the welfare of the children involved. *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599. Although the State does not gain when it separates children from the custody of fit parents, *id.*, the State has a "compelling interest in protecting the welfare of the child by intervening in the parent-child relationship when parental neglect, abuse, or abandonment are at issue." *E.P. v. Marion County Office of Family & Children*, 653 N.E.2d at 1032. Delays in the adjudication of a case impose significant costs upon the functions of government as well an intangible cost to the lives of the children involved. *See In re M.R.*, 316 Ill.App.3d 399, 249 Ill.Dec. 325, 736 N.E.2d 167 (2000), *appeal denied*. The State also has an interest in protecting its citizens from the risk that a convicted criminal might escape and in minimizing the fiscal and administrative burdens associated with transport of a prisoner. *See Matter of Murphy*, 105 N.C.App. 651, 414 S.E.2d 396 (1992), *aff'd*, 332 N.C. 663, 422 S.E.2d 577 (1992).

■■■ In balancing the *Mathews* factors, we hold that the trial court's failure to secure Stanley's physical presence at the termination hearing did not deny Stanley due process of law. Our conclusion comports with the rule of law stated by other jurisdictions, namely, that an incarcerated parent has no absolute right to be physically present at the termination hearing. *See Adoption of Edmund*, 50 Mass.

---

**2.** The United States Supreme Court, however, has recognized a difference between the constitutional protections afforded a developed

parent-child relationship versus a potential relationship. *See Lehr v. Robertson*, 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983).

App.Ct. 526, 739 N.E.2d 274, 277 n. 4 (2000) (citing cases); *In re Adoption No. 6Z980001*, 131 Md.App. 187, 748 A.2d 1020, 1023 n. 2 (2000) (citing cases). In general, the decision whether to permit an incarcerated person to attend such a hearing rests within the sound discretion of the trial court.[3]

#### 2.

■ Stanley also insists that he received ineffective assistance of counsel. A parent in a proceeding to terminate the parent-child relationship is entitled to representation by counsel. IND.CODE ANN. §§ 31–32–2–5, 31-32-4-1 (West 1999); *Matter of A.N.J.*, 690 N.E.2d 716 (Ind.Ct.App.1997). Inherent in that entitlement is the right to effective assistance of counsel. *Callis v. State*, 684 N.E.2d 233 (Ind.Ct.App.1997), *trans. denied.*

In *Matter of D.T.*, 547 N.E.2d 278 (Ind. Ct.App.1989), *trans. denied*, this court considered a claim of ineffective assistance of counsel in the context of a termination of parental rights hearing. Given the nature of the rights terminated, we "assumed" that the standard used in criminal cases to evaluate counsel's effectiveness was appropriate. *Id.* at 282 (citing *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599). Termination decrees work a distinctive type of deprivation, "among the most severe forms of state action...." *M.L.B. v. S.L.J.*, 519 U.S. 102, 128, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996). Further, termination proceedings have been deemed "comparable to criminal proceed-ings" in some respects. *In re D.L.M.*, 725 N.E.2d at 983.

■ Other jurisdictions have utilized the same standard for effective assistance in termination cases as in criminal cases. *See State ex rel. Children, Youth & Families Dep't v. Vanessa C.*, 128 N.M. 701, 997 P.2d 833, 841 (Ct.App.2000) (reiterating that a "majority" of jurisdictions utilize criminal standard), *cert. denied.* We adopt that standard today. Thus, in order to establish ineffective assistance of counsel, a party must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms and that the substandard performance was so prejudicial as to have deprived him of a fair adjudication. *Matter of D.T.*, 547 N.E.2d 278. The result must be rendered unreliable, and the party asserting the claim has the burden of showing that the decision reached would have been different absent the errors. *Id.*

■ Here, Stanley complains that counsel failed to object to his absence at the termination hearing but, as stated previously, he had no absolute right to attend that hearing. Stanley also insists that counsel was ineffective for failing to present witnesses on his behalf and for failing to cross-examine the OFC's witnesses. However, counsel did conduct cross-examination and objected to introduction of an exhibit.

We agree that Stanley had the right to be heard "at a meaningful time and in a meaningful manner." *See McIntosh v.*

**3.** The Supreme Court of Nebraska has provided the following guidance:

In deciding whether to allow a parent's attendance at a hearing to terminate parental rights, notwithstanding the parent's incarceration or other confinement, a court may consider the delay resulting from prospective parental attendance, the need for disposition of the proceeding within the immediate future, the elapsed time during which the proceeding has been pending before the juvenile court, the expense to the State if the State will be required to provide transportation for the parent, the inconve-

nience or detriment to parties or witnesses, the potential danger or security risk which may occur as a result of the parent's release from custody or confinement to attend the hearing, the reasonable availability of the parent's testimony through a means other than parental attendance at the hearing, and the best interests of the parent's child or children in reference to the parent's prospective physical attendance at the termination hearing.

*In re Interest of L.V.*, 240 Neb. 404, 482 N.W.2d 250, 258–59 (1992).

*Melroe Co.,* 729 N.E.2d 972, 975 (Ind.2000) (quoting *Mathews v. Eldridge,* 424 U.S. at 333, 96 S.Ct. 893). The record does not indicate that counsel sought an alternative procedure by which Stanley could participate in the hearing. *See In re Adoption No. 6Z980001,* 748 A.2d 1020 (reviewing cases utilizing alternative procedures); *State ex rel. Children, Youth and Families Dep't v. Ruth Anne E.,* 126 N.M. 670, 974 P.2d 164 (Ct.App.1999) (same). Even if we assume that counsel performed deficiently in that regard, Stanley must still show prejudice. *See Matter of D.T.,* 547 N.E.2d 278.

Significantly, Stanley does not point to any excluded evidence that would have assisted his case. Nor does he challenge any testimony or exhibits introduced by the OFC. Further, he does not fault the court findings regarding his lack of contact with his children and his failure to support them. Without more, Stanley has not shown that he was prejudiced by the alleged error. His claim of ineffective assistance of counsel must fail.

Judgment affirmed.

BAILEY, J., and MATTINGLY, J., concur.