**In the Matter of A.L.H.**

**Sharon Evans, Natural Mother, Appellant–Respondent,**

v.

**St. Joseph County Office of Family and Children, Appellee–Petitioner.**

No. 71A05–0112–JV–522.

Court of Appeals of Indiana.

June 21, 2002.

Publication Ordered Aug. 26, 2002.

Dianne Tillman–Reed, Fred R. Hains & Associates, South Bend, IN, Attorney for Appellant.

Michael G. Gotsch, Counsel, St. Joseph County, Office of Family and Children, South Bend, IN, Attorney for Appellee.

## OPINION

BAKER, Judge.

Appellant-respondent Sharon Evans appeals the trial court's order terminating her parental rights with regard to her daughter A.L.H. Specifically, Evans claims that there was insufficient evidence to support the trial court's finding that the conditions that led to the child's removal would not be remedied and that the continuation of the parent-child relationship between Evans and A.L.H. posed a threat to A.L.H.'s well-being. In addition, Evans claims she was denied due process when the trial court failed to consider whether to appoint a Guardian Ad Litem (GAL) at the initial hearing. Finding that sufficient evidence sustained the trial court's termination order and that the lack of a GAL at the initial hearing did not deny Evans's right to due process, we affirm.

## FACTS

The facts most favorable to the judgment are that Evans is the mother of A.L.H., born June 13, 1995. On February 19, 1996, A.L.H. was admitted to the South Bend Memorial Hospital with a diagnosis of severe failure to thrive. After being taken to the emergency room, hospital personnel noticed marks on her body suggesting she suffered from "shaken baby syndrome." Appellant's App. p. 207. Consequently, the St. Joseph County Office of Family and Children (COFC) removed the child from Evans's care and control and filed a petition alleging that A.L.H. was a Child In Need of Services (CHINS). On May 29, 1996, the court determined that A.L.H. was a CHINS.

The court then entered an Order of Dispositional Hearing (Dispositional Decree) on June 11, 1996, designed to provide services and counseling to Evans and A.L.H.

Evans did not successfully complete the services mandated by the Dispositional Order with respect to counseling. Evans also admitted that she had difficulties in finding adequate and stable housing. Tr. p. 194–96. Further, she acknowledged that she was married in May 1999, but the marriage ended in a divorce in March 2000, partly due to her husband's domestic violence. Tr. p. 210. On September 5, 2000, the COFC filed a Petition for Involuntary Termination of the Parent–Child Relationship, seeking to terminate the relationship between A.L.H. and Evans. Following a trial that ended on October 5, 2001, the parental rights of Evans were terminated. She now appeals.

## DISCUSSION AND DECISION

### I. Sufficiency of the Evidence

■ Evans contends that the COFC presented insufficient evidence to support the termination of her parental rights. Specifically, she argues that the COFC failed to prove that there is a reasonable probability that the conditions that resulted in A.L.H.'s removal will not be remedied and that the termination of her parental rights was in the A.L.H.'s best interests.

■ In addressing Evans's contentions, we note that this court will not set aside the trial court's judgment terminating a parent-child relationship unless it is clearly erroneous. *In re A.A.C.*, 682 N.E.2d 542, 544 (Ind.Ct.App.1997). When reviewing the sufficiency of the evidence to support a judgment of involuntary termination of a parent-child relationship, this court neither reweighs the evidence nor judges the credibility of the witnesses.

*Egly v. Blackford County Dep't of Pub. Welfare,* 592 N.E.2d 1232, 1234 (Ind.1992). Rather, we will consider only the evidence and reasonable inferences therefrom which are most favorable to the judgment. *Id.* at 1234.

Parental rights are of constitutional dimension but the law provides for the termination of those rights when the parents are unable or unwilling to meet their parental responsibilities. *In re L.S.,* 717 N.E.2d 204, 208 (Ind.Ct.App.1999), *trans. denied.* The parent's right to establish a home and raise his children is protected by the Fourteenth Amendment to the United States Constitution but these protected interests are not absolute. *Id.* The trial court must subordinate the interests of the parent to those of the child in determining the appropriate disposition of a petition to terminate the parent-child relationship. *Id.*

Under Ind.Code § 31–35–2–4(b), the COFC must prove four elements by clear and convincing evidence in order to terminate the parent-child relationship:

(A) one (1) of the following exists:

 (i) the child has been removed from the parent for at least six (6) months under a dispositional decree;

 . . . .

(B) there is a reasonable probability that:

 (i) the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied; or

 . . . .

(C) termination is in the best interests of the child; and

(D) there is a satisfactory plan for the care and treatment of the child.

I.C. § 31–35–2–4(b).

According to Evans, the COFC failed to prove by clear and convincing evidence that there is a reasonable probability that the conditions that resulted in A.L.H.'s removal would not be remedied. Specifically, she argues that there is no evidence showing that she failed to provide for A.L.H. prior to her removal or that A.L.H. was in any way neglected. She asserts that, because there were no grounds to remove A.L.H. from her, "the trial court clearly erred in finding in favor of the COFC." Appellant's Br. p. 26.

In addressing Evans's contention, we observe that a court "should judge a parent's fitness to care for children as of the time of the termination proceeding, taking into consideration evidence of changed conditions." *Matter of D.G.,* 702 N.E.2d 777, 779 (Ind.Ct.App.1998). However, recognizing the permanent effect of termination, this court has stated that the trial court must also evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation of the children. *Id.* Based on that rule, trial courts have properly considered evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, lack of adequate housing, and employment. *Id.*

Here, the record shows that A.L.H. was removed from Evans's custody due to substantiated neglect and abuse. Appellant's App. p. 193–97. A.L.H. was admitted to the hospital for severe failure to thrive and bruises on the chest, epidural haematoma, and retinal hemorrhaging, which are all symptoms consistent with shaken baby syndrome.

After removal, Evans was referred for a substance abuse treatment evaluation, parenting classes, and counseling. Although she completed a substance abuse treatment evaluation, Evans failed to complete the counseling program parenting classes, and failed to obtain and maintain stable and adequate housing. The record shows

that at the time of the trial, Evans had not remedied the original reasons for A.L.H.'s removal. Tr. p. 37–42. On several occasions, Evans did not exercise her right to visit A.L.H. Thus, Evans demonstrated a lack of commitment to complete the actions necessary to preserve her parent-child relationship with A.L.H. In light of this evidence, the trial court properly determined that the conditions that led to the child's removal were unlikely to be remedied.

In addressing whether continuation of the parent-child relationship is in the child's best interests, we note that Evans has been unable to provide a stable environment for A.L.H. The record shows that Evans lived in seven different residences between 1996 and 2001. Tr. p. 194–96. "A parent's historical inability to provide adequate housing, stability and supervision coupled with a current inability to provide the same will support a finding that continuation of the parent-child relationship is contrary to the child's best interests." *In re Adoption of D.V.H.*, 604 N.E.2d 634, 638 (Ind.Ct.App.1992), *trans. denied.* Accordingly, we conclude that the trial court properly determined that termination was in A.L.H.'s best interests.

## II. Due Process

Evans claims that the trial court violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution when it did not appoint a GAL at the beginning of the CHINS proceedings. Specifically, she asserts that a GAL "would have likely made a difference throughout the progression of the ongoing CHINS action." Appellant's Br. p. 24.

To reverse a trial court's judgment based on fundamental error, this court must determine that the error was a "clear blatant violation of basic and elementary principles, and the harm or potential harm

must be substantial and appear clearly and prospectively." *M.M. v. Elkhart Office of Family & Children,* 733 N.E.2d 6, 11 (Ind. Ct.App.2000). The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without a fair proceeding. *Ind. High Sch. Athletic Ass'n. v. Carlberg,* 694 N.E.2d 222, 241 (Ind.1997). In *A.P. v. Porter County Office of Family & Children,* this court acknowledged that due process in parental rights involves the balancing of three factors: (1) the private interests affected by the proceeding; (2) the risk of error created by the State's chosen procedure; and (3) the countervailing government interest supporting use of the challenged procedure. 734 N.E.2d 1107, 1112 (Ind.Ct.App.2000).

Here, Evans's private interest is substantial inasmuch as her parental rights have been terminated. The United States Supreme Court recognized that "a parent's interest in the care, custody, and control of his children, is 'perhaps the oldest of the fundamental liberty interests.'" *J.T. v. Marion County Office of Family & Children,* 740 N.E.2d 1261, 1264 (Ind.Ct.App. 2000) (quoting *Troxel v. Granville,* 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000)), *trans. denied.* The government's countervailing interest is also substantial. The State of Indiana has a compelling interest in protecting the welfare of the children. *In the Matter of E.M.,* 581 N.E.2d 948, 952 (Ind.Ct.App.1991), *trans. denied.*

Moving to the final factor—the risk of error—Evans claims that the failure of the trial court to appoint a GAL or a court-appointed special advocate (CASA) during the CHINS proceedings denied her due process rights. We acknowledge that the failure to appoint a GAL or a CASA in a termination proceeding is sufficient to grant reversal of the trial court's decision.

*See Jolley v. Posey County Dep't of Pub. Welfare,* 624 N.E.2d 23, 23 (Ind.Ct.App. 1993). However, in the present case, a CASA was appointed in the termination proceedings. Appellant's App. p. 9–10. The question remains whether the lack of a GAL or a CASA during the CHINS proceedings automatically warrants reversal.

At the time A.L.H. was adjudicated a CHINS, Ind.Code § 31–6–4–13.6 (West Supp.1996) was applicable to the appointment of a GAL in CHINS proceedings. It provided that:

> The juvenile court shall first determine whether the following conditions make it appropriate to appoint a guardian ad litem or a court appointed special advocate, or both, for the child:
>
> . . . .
>
> (2) if the child is alleged to be a child in need of services under:
>
> (A) IC 31–6–4–3(a)(1);
>
> . . . .
>
> The court may appoint a guardian ad litem, [a] court appointed special advocate, or both, for the child.

I.C. § 31–6–4–13.6(c) (West Supp.1996) (now codified at Ind.Code 31–34–10–3).

The statute explicitly gives discretion to trial courts to determine, in such cases, whether the appointment of a CASA or a GAL is required. The record shows that the trial court considered the appointment of a CASA or a GAL. The trial court ruled that the appointment of a CASA or GAL for A.L.H. was not warranted under the circumstances. Appellant's App. p. 8. Evans did not provide evidence showing how the trial court abused its discretion by refusing the appointment of a GAL or a CASA during the CHINS hearings. Further, Evans did not show how different the result of the proceedings would have been if a GAL or a CASA had been appointed. The CHINS proceedings gave Evans five years to remedy the original reason for the removal of A.L.H.

Furthermore, a GAL is an individual appointed by a court "to represent and protect the best interests of a child and to provide that child with services requested by the court, including researching, advocating, facilitating, and monitoring the child's situation." Ind.Code § 31–9–2–50. The language of the statute is plain: the GAL is appointed to protect the interests of the child. *See Matter of Paternity of A.R.R.,* 634 N.E.2d 786, 790 (Ind.Ct.App. 1994). Therefore, Evans may not claim prejudice caused by the trial court's refusal to appoint a GAL or CASA during the CHINS proceedings. Finally, when the COFC filed a petition to terminate the parent-child relationship, the trial court not only appointed a CASA, but also appointed counsel to represent Evans in the termination proceedings. Upon balancing the three factors enunciated in *A.P.,* we conclude that the trial court did not deny Evans due process when it refused to appoint a GAL or a CASA for the CHINS proceedings.

Judgment affirmed.

SULLIVAN, J., and DARDEN, J., concur.

### ORDER

This Court having heretofore handed down its opinion in this appeal marked Memorandum Decision, Not for Publication, on June 21, 2002.

Comes now the Appellee, by counsel, and files herein Motion for Publication of Memorandum Decision, alleging therein that the decision clarified rules of law established in other cases and established a new rule of law and that by publishing the decision, the Court would provide valuable precedent of an issue of public importance to the County Office of Family and Chil-

dren in all of the counties of the State of Indiana and to the courts of the State.

The Court having examined said Motion, having reviewed its opinion in this case and being duly advised, now finds that should be granted.

IT IS THEREFORE ORDERED as follows:

1. The Appellees' Motion to Publish Opinion heretofore handed down in this cause on June 21, 2002, marked Memorandum Decision, Not for Publication, is now ordered published.