**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 05 2013, 10:01 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**HUGH N. TAYLOR**
Hugh N. Taylor, P.C.
Auburn, Indiana

ATTORNEYS FOR APPELLEE:

**ROBERT J. HENKE**
Department of Child Services,
Central Administration
Indianapolis, Indiana

**MICHELLE S. BOSTAIN**
DCS, Steuben County Office
Angola, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF THE INVOLUNTARY TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF L.R., MINOR CHILD, AND HER FATHER, R.R., )
)
)
)
)
R.R. )
)
    Appellant-Respondent, )
)
        vs. )    No. 76A03-1206-JT-286
)
INDIANA DEPARTMENT OF CHILD SERVICES, )
)
)
    Appellee-Petitioner. )

APPEAL FROM THE STEUBEN CIRCUIT COURT
The Honorable Allen N. Wheat, Judge
Cause No. 76C01-1203-JT-113

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

Appellant-Respondent R.R. ("Father") appeals the juvenile court's order terminating his parental rights to L.R. In challenging the termination of his parental rights, Father does not challenge the sufficiency of the evidence provided by the Indiana Department of Child Services ("DCS") but rather alleges only that the juvenile court abused its discretion in denying his request for a continuance of the termination proceedings. Concluding that the juvenile court did not abuse its discretion in denying Father's request for a continuance, we affirm.

**FACTS AND PROCEDURAL HISTORY**

Father has one child, L.R., at issue in this appeal.[1] L.R. was born on November 12, 2006. Father was not present at L.R.'s birth but claimed to have been involved with L.R. and L.R.'s mother for approximately six or seven months after L.R.'s birth. Father has been incarcerated since November of 2008, and has not had contact with or engaged in a meaningful relationship with L.R. since becoming incarcerated. DCS first became involved with L.R. after receiving reports that T.B., an adult with whom L.R.'s mother had left L.R., had sexually molested L.R. The reports of molestation were subsequently substantiated, after which L.R. was removed from her mother's care.

On December 14, 2010, DCS filed a petition alleging that L.R. was a child in need of

---

[1] The termination of the parental rights of L.R.'s mother is not at issue in this appeal.

services ("CHINS"). On February 22, 2011, Father appeared at a hearing and denied the CHINS allegation. Notwithstanding Father's denial, the juvenile court adjudicated L.R. as a CHINS. On March 15, 2011, Father was represented by counsel at a disposition hearing during which he was ordered to participate in various services.

On March 14, 2012, DCS filed a petition seeking the termination of Father's parental rights to L.R. The juvenile court conducted an initial hearing on the termination petition on April 24, 2012. Father appeared at this hearing and denied the allegations set forth in the termination petition.

On May 24, 2012, Father filed a motion for continuance in which he stated that he had filed a petition for post-conviction relief ("PCR") with respect to unrelated criminal convictions from Allen County. Father requested that the juvenile court continue the termination proceedings for ninety days to allow the Allen County post-conviction court an opportunity to conduct a hearing on his PCR petition. The juvenile court denied Father's motion. On May 25, 2012, the juvenile court conducted an evidentiary termination hearing at which Father appeared and was represented by counsel. At the beginning of the hearing, Father renewed his request for a continuance of the termination proceedings. The juvenile court denied Father's request and moved forward with the evidentiary hearing.

During the evidentiary hearing, DCS introduced evidence relating to Father's failure to remedy the conditions leading to L.R.'s removal, including his failure to complete any of the services recommended by DCS, his incarceration until at least 2018, his lack of guaranteed stability upon release, and his lack of contact or a meaningful relationship with

3

L.R. DCS also provided evidence indicating that termination of Father's parental rights was in L.R.'s best interests and that its plan for the permanent care and treatment of L.R. was adoption. On May 31, 2012, the juvenile court terminated Father's parental rights to L.R. Father now appeals.

## DISCUSSION AND DECISION

The Fourteenth Amendment to the United States Constitution protects the traditional right of a parent to establish a home and raise his children. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 145 (Ind. 2005). Further, we acknowledge that the parent-child relationship is "one of the most valued relationships of our culture." *Id.* However, although parental rights are of a constitutional dimension, the law allows for the termination of those rights when a parent is unable or unwilling to meet her responsibility as a parent. *In re T.F.*, 743 N.E.2d 766, 773 (Ind. Ct. App. 2001), *trans. denied*. Therefore, parental rights are not absolute and must be subordinated to the child's interest in determining the appropriate disposition of a petition to terminate the parent-child relationship. *Id.*

The purpose of terminating parental rights is not to punish the parent but to protect the child. *Id.* Termination of parental rights is proper where the child's emotional and physical development is threatened. *Id.* The juvenile court need not wait until the child is irreversibly harmed such that her physical, mental, and social development is permanently impaired before terminating the parent-child relationship. *Id.*

**Whether the Juvenile Court Abused its Discretion in
Denying Father's Request for a Continuance**

Father argues that the trial court abused its discretion in denying his request for a continuance.

> The decision to grant or deny a motion for a continuance rests within the sound discretion of the trial court. *Riggin v. Rea Riggin & Sons, Inc.*, 738 N.E.2d 292, 311 (Ind. Ct. App. 2000). We will reverse the trial court only for an abuse of that discretion. *Id.* An abuse of discretion may be found in the denial of a motion for a continuance when the moving party has shown good cause for granting the motion. *Id.* However, no abuse of discretion will be found when the moving party has not demonstrated that he or she was prejudiced by the denial. *Id.*

*Rowlett v. Vanderburgh Cnty. Office of Family & Children*, 841 N.E.2d 615, 619 (Ind. Ct. App. 2006).

In arguing that the juvenile court abused its discretion in denying his request for a continuance, Father claims that the juvenile court's denial of his requested continuance resulted in a denial of his procedural due process rights.

> The Due Process Clause of the United States Constitution prohibits state action that deprives a person of life, liberty, or property without a fair proceeding. *In re Paternity of M.G.S.*, 756 N.E.2d 990, 1004 (Ind. Ct. App. 2001), *trans. denied*. When the State seeks to terminate the parent-child relationship, it must do so in a manner that meets the requirements of due process. *J.T. v. Marion County Office of Family & Children*, 740 N.E.2d 1261, 1264 (Ind. Ct. App. 2000), *reh'g denied*, *trans. denied*. The nature of the process due in a termination of parental rights proceeding turns on the balancing of three factors: (1) the private interests affected by the proceeding, (2) the risk of error created by the State's chosen procedure, and (3) the countervailing governmental interest supporting use of the challenged procedure. *Id.* This Court must first identify the precise nature of the private interest threatened by the State before we can properly evaluate the adequacy of the State's process. *In re M.G.S.*, 756 N.E.2d at 1005.

*In re C.C.*, 788 N.E.2d 847, 852 (Ind. Ct. App. 2003), *trans. denied*.

In cases involving the termination of one's parental rights, both the private interests of

the parent and the countervailing governmental interests that are affected by the proceedings are substantial. *Id.* In particular, the action concerns a parent's interest in the care, custody, and control of his child, which again, has been recognized as one of the most valued relationships in our culture. *Id.* (citing *In re J.T.*, 740 N.E.2d at 1264). "Moreover, it is well settled that the right to raise one's child is an essential, basic right that is more precious than property rights." *Id.* (citing *In re M.G.S.*, 756 N.E.2d at 1005). "As such, a parent's interest in the accuracy and justice of the decision is commanding." *Id.* (citing *In re J.T.*, 740 N.E.2d at 1264). "On the other hand, the State's *parens patriae* interest in protecting the welfare of a child is also significant." *Id.* (citing *In re J.T.*, 740 N.E.2d at 1264).

"Delays in the adjudication of a case impose significant costs upon the functions of the government as well as an intangible cost to the life of the child involved." *Id.* (citing *In re J.T.*, 740 N.E.2d at 1264). Thus, "[w]hile continuances may be necessary to ensure the protection of a parent's due process rights, courts must also be cognizant of the strain these delays place upon a child." *Id.* at 853. "When balancing the competing interests of a parent and the State, we must also consider the risk of error created by the challenged procedure." *Id.*

Here, Father contends that the juvenile court's denial of his request for a continuance precluded him from having the opportunity to be heard at a meaningful time. Father's challenge on appeal appears to be based solely on his belief that he had a successful claim on PCR relating to his criminal convictions from Allen County and his hope that, if successful, his sentences for those convictions might be reduced, allowing him to potentially participate

6

in services sooner. However, Father's belief about the potential success of his claim on PCR is just that, his belief, and the juvenile court was not required to accept Father's belief as evidence that Father had a successful claim that would result in the reduction of his current term of incarceration.

The record demonstrates that Father requested the continuance one day before the evidentiary hearing was scheduled to commence. The juvenile court denied Father's request. Father had attended prior termination proceedings but had not, at any time, requested that the termination proceedings be continued pending the outcome of any unrelated criminal or post-conviction proceedings. Father renewed his request for a continuance at the beginning of the evidentiary hearing. This request was again denied. Father was present during the evidentiary hearing and was represented by counsel. Father testified and, through his counsel, had the opportunity to cross-examine DCS's witnesses, present testimony and exhibits, and fully participate in the proceedings.

Father does not develop any argument as to why his attendance at and participation in the evidentiary hearing did not constitute an opportunity to be heard at a meaningful time sufficient to satisfy his procedural due process rights. Likewise, Father fails to establish that he was prejudiced by the juvenile court's denial of his request for a continuance. Accordingly, we conclude that juvenile court did not abuse its discretion in denying Father's motion to continue. *Rowlett*, 841 N.E.2d at 619. Having concluded that the juvenile court did not abuse its discretion in denying Father's request for a continuance, we affirm the judgment of the juvenile court.

The judgment of the juvenile court is affirmed.

NAJAM, J., and FRIEDLANDER, J., concur.