**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Dec 31 2013, 11:03 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**KIMBERLY A. JACKSON**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
**PATRICK M. RHODES**
**DAVID E. COREY**
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF: K.W., Minor Child, | ) ) ) |
| | ) |
| C.C., Mother, | ) |
| | ) |
| Appellant-Respondent, | ) |
| | ) |
| vs. | )  No. 49A02-1305-JT-468 |
| | ) |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) |
| | ) |
| Appellee-Petitioner. | ) |

---

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marilyn Moores, Judge
The Honorable Larry Bradley, Magistrate
Cause No. 49D09-1211-JT-42678

---

**December 31, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**MAY, Judge**

C.C. (Mother) appeals the involuntary termination of her parental rights to K.W. She argues the juvenile court should have granted her motion for continuance the day of the termination hearing and her counsel was ineffective. We affirm.

## FACTS AND PROCEDURAL HISTORY

K.W. was born August 22, 2011.[1] On September 27, the Department of Child Services alleged K.W. was a Child in Need of Services (CHINS) because K.W. tested positive for cocaine when born and Mother had unresolved substance abuse issues. On December 15, the juvenile court adjudicated K.W. a CHINS and ordered Mother to, among other things, contact the family case manager (FCM) weekly; notify the FCM of any arrests, criminal charges, or changes in address; enroll in programs recommended by the FCM or other service providers; maintain suitable, safe, and stable housing; secure and maintain a legal and stable source of income; and to refrain from the use or manufacture of illegal substances; participate in and successfully complete a home-based therapy program; complete a substance abuse evaluation and complete all recommended services; and submit to random drug screens.

During the CHINS proceedings, Mother met with five different home-based therapists. Each time, her participation therapy was discontinued by the provider for poor attendance and failure to progress in services. Twice, therapy was discontinued because Mother was incarcerated. Mother completed a substance abuse assessment as ordered by the juvenile court, but did not successfully complete either of the two substance abuse

---

[1] K.W's father does not participate in this appeal.

2

rehabilitation programs to which she was referred. Finally, Mother tested positive for illegal substances three times, and she told K.W.'s foster father in January 2013 that she still struggled with substance abuse.

On November 1, 2012, DCS filed a petition to terminate Mother's parental rights to K.W. The juvenile court granted Mother a continuance on January 18, 2013, and granted DCS an emergency continuance on March 12. The juvenile court held a termination hearing on April 22, during which Mother was not present because she was incarcerated. On May 1, the juvenile court issued an order terminating Mother's parental rights to K.W.

## DISCUSSION AND DECISION

We review termination of parental rights with great deference. *In re K.S.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge credibility of witnesses. *In re D.D.,* 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied.* Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id.* In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*, *cert. denied* 534 U.S. 1161 (2002).

When, as here, a judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We determine first whether the evidence supports the findings and second whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by

3

inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

"The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied.* A trial court must subordinate the interests of the parents to those of the child, however, when evaluating the circumstances surrounding a termination. *In re K.S.*, 750 N.E.2d at 837. The right to raise one's own child should not be terminated solely because there is a better home available for the child, *id.*, but parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.* at 836.

To terminate a parent-child relationship in Indiana, the State is required to allege and prove:

> (A) that one (1) of the following is true:
>> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
>> (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
>> (iii) The child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
> (B) that one (1) of the following is true:
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>> (ii) There is a reasonable probability that the continuation of the parent-

4

child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). The State must prove these allegations by clear and convincing evidence. *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009), *reh'g denied*. If the court finds the allegations in the petition are true, it must terminate the parent-child relationship. Ind. Code § 31-35-2-8.

1. Motion to Continue

Mother argues she was denied due process when the juvenile court denied her motion to continue based on Mother's incarceration. The decision to grant or deny a continuance rests within the sound discretion of the juvenile court. *Rowlett v. Vanderburgh Cty. Office of Family & Children*, 841 N.E.2d 615, 619 (Ind. Ct. App. 2006), *trans. denied*. We will reverse the court's decision only for an abuse of that discretion. *Id*. An abuse of discretion occurs when the party requesting the continuance has shown good cause for granting the motion and the juvenile court denies it. *Id*. No abuse of discretion will be found when the moving party is not prejudiced by the denial of its motion. *Id*.

Regarding a parent's due process rights in a termination proceeding, our Indiana Supreme Court has held:

It is well established that the involuntary termination of parental rights is an extreme measure that is designed to be used as a last resort when all other reasonable efforts have failed. *In re B.D.J.*, 728 N.E.2d 195, 199 (Ind. Ct. App. 2000). Choices about marriage, family life, and the upbringing of children are among associational rights the United States Supreme Court has ranked as of basic importance in our society and are rights sheltered by the

5

Fourteenth Amendment against the State's unwarranted usurpation, disregard, or disrespect. *M[.]L[.]B. v. S.L.J.*, 519 U.S. 102, 116, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996). "If any freedom not specifically mentioned in the Bill of Rights enjoys a 'preferred position' in the law it is most certainly the family." *Moore v. City of East Cleveland*, 431 U.S. 494, 511, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (Brennan, J., concurring).

"The Due Process Clause of the U.S. Constitution and the Due Course of Law Clause of the Indiana Constitution prohibit state action that deprives a person of life, liberty, or property without a fair proceeding." *In re Paternity of M.G.S.*, 756 N.E.2d 990, 1004 (Ind. Ct. App. 2001), *trans. denied*. Parental rights constitute an important interest warranting deference and protection, and a termination of that interest is a "unique kind of deprivation." *Lassiter v. Dept. of Soc. Servs.*, 452 U.S. 18, 27, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). However, children have an interest in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term, continuous relationships. *Lehman v. Lycoming County Children's Servs. Agency*, 458 U.S. 502, 513, 102 S.Ct. 3231, 73 L.Ed.2d 928 (1982). When the State seeks to terminate the parent-child relationship, it must do so in a manner that meets the requirements of due process. *J.T. v. Marion County Office of Family & Children*, 740 N.E.2d 1261, 1264 (Ind. Ct. App. 2000), *trans. denied*.

*In re C.G.*, 954 N.E.2d 910, 916-17 (Ind. 2011). A parent does not have a constitutional right to be physically present at a termination hearing. *Id*. at 921. Whether or not to permit an incarcerated parent to attend a termination hearing is within the sound discretion of the juvenile court. *Id*. at 922. In exercising that discretion,

the trial court judge should balance the following factors: (1) The delay resulting from parental attendance; (2) the need for an early determination of the matter; (3) the elapsed time during which the proceeding has been pending; (4) the best interests of the child(ren) in reference to the parent's physical attendance at the termination hearing; (5) the reasonable availability of the parent's testimony through a means other than his or her attendance at the hearing; (6) the interests of the incarcerated parent in presenting his or her testimony in person rather than by alternate means; (7) the affect of the parent's presence and personal participation in the proceedings upon the probability of his or her ultimate success on the merits; (8) the cost and inconvenience of transporting a parent from his or her place of incarceration to the courtroom; (9) any potential danger or security risk which may accompany the incarcerated parent's transportation to or presence at the proceedings; (10)

the inconvenience or detriment to parties or witnesses; and (11) any other relevant factors.

*Id*. at 922-23.

The juvenile court granted Mother's first request for a continuance on January 17, 2013, so she could participate in services after being released from incarceration.[2]  Mother did not attend the pre-trial hearing on March 15 because she was on house arrest.  At that time, the juvenile court scheduled the termination hearing for April 22.  DCS sent notice of the termination hearing to Mother's last known address on April 1, and, upon learning she was incarcerated at the Marion County Jail, sent notice to her there on April 8.  At the time of the April 22 hearing, Mother was still incarcerated and her counsel requested a continuance to secure her presence, stating Mother "believes she is going to be released on May first either to work release or home detention."  (Tr. at 1.)  In addition, at the time of the termination, K.W. had been in foster care for approximately a year and a half, and the termination petition had been pending for almost six months.

Because she was not at the hearing, Mother argues, she could not "establish her defense - that she failed to complete services because she planned to consent to adoption." (Br. of Appellant at 16.)  However, Mother was represented by counsel throughout the proceedings, and counsel presented evidence of Mother's proffered "defense" and cross-examined witnesses.  The juvenile court heard testimony from the Family Case Manager, K.W.'s foster father, maternal grandmother, and Mother's homebased therapist, Matthew

---

[2] DCS also requested, and the court granted, an Emergency Request for Continuance of the pre-trial hearing on March 12, 2013, due to an unexpected family illness.  Mother did not object to DCS's request.

Walsh, about Mother's initial willingness to consent to K.W.'s adoption provided she was given post-adoption visitation. Walsh testified Mother told him she wanted to discontinue visits with him because she was "gonna [sic] sign [her] rights away" and didn't "want to waste [Walsh's] time." (Tr. at 111.) He also testified she later decided to "fight" the termination but did not indicate she had restarted services. (*Id.*)

The evidence supporting the involuntary termination of Mother's parental rights was overwhelming. DCS presented evidence Mother routinely missed appointment for services, failed to make progress in services, did not complete two substance abuse treatment programs as required by the court's order, tested positive for illegal substances multiple times throughout the proceedings, told the foster father when they met in January 2013 that she had "some problems with drug abuse in the past and she was still struggling with that," (Tr. at 96), and she had been incarcerated and arrested multiple times throughout the proceedings. While Mother may be correct concerning the minimal cost and inconvenience of transporting her from jail, the other factors do not weigh in her favor. Therefore, we conclude the juvenile court did not abuse its discretion when it denied Mother's motion to continue.

2.    Ineffective Assistance of Counsel

Regarding the assistance of counsel in a termination proceeding, our Indiana Supreme Court has held:

> Where parents whose rights were terminated upon trial claim on appeal that their lawyer underperformed, we deem the focus of the inquiry to be whether it appears that the parents received a fundamentally fair trial whose facts demonstrate an accurate determination. The question is not whether the lawyer might have objected to this or that, but whether the lawyer's overall performance was so defective that the appellate court cannot say with

8

confidence that the conditions leading to the removal of the children from parental care are unlikely to be remedied and that termination is in the child's best interest.

*Baker*, 810 N.E.2d at 1041. Mother argues her counsel was ineffective because he did not request that she be transported from the Marion County Jail to attend the termination hearing or, in the alternative, request that Mother be permitted to attend the hearing telephonically.

Counsel could have done more to secure Mother's presence during the hearing, but counsel's performance was not so defective as to warrant a different outcome. Mother's counsel entered an appearance in December 2012 and had attended every subsequent hearing. The evidence supporting the involuntary termination of Mother's parental rights to K.W. was overwhelming and the defense she now alleges she would have presented at the hearing was made known to the court. She has not demonstrated how, if at all, her presence would have changed the ultimate outcome of the termination hearing, and we therefore conclude she has not demonstrated her counsel was ineffective.

## CONCLUSION

The trial court did not abuse its discretion when it denied the motion to continue filed on the day of the termination hearing because her proffered defense was before the court and the evidence supporting termination was overwhelming. Nor has she demonstrated her counsel was ineffective for failing to secure her presence, either physically or telephonically, at the termination hearing. Accordingly, we affirm.

Affirmed.

RILEY, J., and VAIDIK, J., concur.

9