# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 26 2018, 8:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Anna Onaitis Holden
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

David E. Corey
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent- Child Relationship of J.B. (Child) and L.G. (Father);

L.G. (Father),
*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

April 26, 2018

Court of Appeals Case No.
49A04-1711-JT-2636

Appeal from the Marion Superior Court

The Honorable Marilyn Moores, Judge
The Honorable Larry Bradley, Magistrate

Trial Court Cause No.
49D09-1609-JT-1064

**May, Judge.**

[1] L.G. ("Father") appeals the involuntary termination of his parental rights to J.B. ("Child"). Father argues his due process rights were violated when the Department of Child Services ("DCS") did not provide him with services or with visitation with Child prior to terminating his parental rights. We affirm.

## Facts and Procedural History

[2] Father and A.B. ("Mother")[1] are the biological parents of Child, born July 7, 2015. Father and Mother were not married at the time of Child's birth, but Father testified he saw Child "almost every day," (Tr. Vol. II at 10), for the first month of her life. In late July or early August 2015, Mother called Father and asked him to come get Child, because she intended to harm herself and Child. Father took Child from Mother and placed Child with Father's sister.

[3] On August 18, 2015, federal authorities arrested Father in connection with his involvement in drug sales on two websites called "Black Bank" and "Silk Road." (Tr. Vol. II at 10-11.) On August 20, 2015, DCS took custody of Child because Father was incarcerated and Mother had mental health issues that rendered her unable to care for Child. At a hearing on September 5, 2015, DCS advised the trial court Father was incarcerated in Henderson, Kentucky, and the trial court appointed Father counsel at Father's request.

---

[1] Mother does not participate in this appeal.

[4] On November 12, 2015, the trial court adjudicated Child as a Child in Need of Services (CHINS) based on admissions by Mother and Father. The trial court entered its dispositional order the same day. The trial court did not order Father's participation in services. On December 22, 2015, Father pled guilty to federal charges of one count each of conspiring to possess with intent to distribute heroin, possession with intent to distribute heroin, and eight counts of money laundering.

[5] At an August 25, 2016, permanency hearing, the trial court changed Child's permanency plan from reunification to adoption. The trial court found, "[Father] remains incarcerated and unable to parent." (Ex. Vol. I at 100.) On September 19, 2016, DCS filed a petition to terminate Father's parental rights to Child.[2]

[6] On October 4, 2017, a federal court sentenced Father to ten concurrent seventy-five-month sentences with three years of supervised release. At the time of his sentencing, Father's attorney told him that he had thirty-nine months to serve on his sentence. On October 18, 2017, the trial court held a termination hearing as to Father, at which he appeared telephonically. During the pendency of the CHINS and termination proceedings, Father was incarcerated in Henderson, Kentucky, at a holding facility. At the termination hearing, Father testified there were no programs available at the holding facility and

---

[2] Mother consented to Child's adoption at an earlier date.

visitation is limited to fifteen minutes per visit. Father had not seen Child since his arrest in August 2015. The trial court terminated Father's parental rights to Child on October 23, 2017.

## Discussion and Decision

[7] We review termination of parental rights with great deference. *In re K.S., D.S., & B.G.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge credibility of witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id.* In deference to the juvenile court's unique position to assess the evidence, we will set aside a judgment terminating a parent's rights only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*, *cert. denied* 534 U.S. 1161 (2002).

[8] "The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. A trial court must subordinate the interests of the parents to those of the children, however, when evaluating the circumstances surrounding a termination. *In re K.S.*, 750 N.E.2d at 837. The right to raise one's own children should not be terminated solely because there is a better home available for the children, *id.*, but parental rights may be terminated when a parent is unable or unwilling to meet parental responsibilities. *Id.* at 836.

[9]     To terminate a parent-child relationship, the State must allege and prove:

>  (B) that one (1) of the following is true:
>
>>  (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>>  (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>>  (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
>  (C) that termination is in the best interests of the child; and
>
>  (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). The State must provide clear and convincing proof of these allegations. *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009), *reh'g denied*. If the court finds the allegations in the petition are true, it must terminate the parent-child relationship. Ind. Code § 31-35-2-8.

[10]     When, as here, a judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We determine whether the evidence supports the findings and whether the findings support the judgment.

*Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." [3] *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the juvenile court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

[11] In a termination of parental rights proceeding, parents have certain due process rights:

> When a State seeks to terminate the parent-child relationship, it must do so in a manner that meets the requirements of the due process clause. *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L.Ed.2d 599 (1982). Although due process has never been precisely defined, the phrase embodies a requirement of "fundamental fairness." *E.P. v. Marion County Office of Family & Children*, 653 N.E.2d 1026, 1031 (Ind. Ct. App. 1995) (quoting *Lassiter v. Dep't of Social Servs.*, 452 U.S. 18, 26, 101 S. Ct. 2153, 68 L.Ed.2d 640 (1981)). Citing *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L.Ed.2d 18 (1976), this court has recently acknowledged that the nature of the process due in parental rights termination proceedings turns on a balancing of three factors: (1) the private interests affected by the proceeding, (2) the risk of error created by the State's chosen procedure, and (3) the countervailing governmental interest supporting use of the challenged procedure. *A.P. v. Porter County Office of Family and Children*, 734 N.E.2d 1107 (Ind. Ct. App. 2000)[, *reh'g denied*].

---

[3] Father does not challenge the trial court's findings, and thus we accept them as true. *See Madlem v. Arko*, 592 N.E.2d 686, 687 (Ind. 1992) ("Because Madlem does not challenge the findings of the trial court, they must be accepted as correct.").

*J.T. v. Marion Cty. Office of Family & Children*, 740 N.E.2d 1261, 1264 (Ind. Ct. App. 2000), *reh'g denied, trans. denied, abrogated on other grounds by Baker v. Marion Cty. Office of Family & Children*, 810 N.E.2d 1035, 1041 (Ind. 2004). In addition, "procedural irregularities in a CHINS proceedings [sic] may be of such import that they deprive a parent of procedural due process with respect to the termination of his or her parental rights." *A.P.*, 734 N.E.2d at 1112-13.

[12]     Father argues his due process rights were violated when DCS did not provide services to Father or attempt to reunify him with his Child. DCS does not dispute Father was not offered services or visitation as part of the CHINS proceedings. Father argues DCS was required to offer reunification services pursuant to statute:

> (b) Except as provided in section 5.6[4] of this chapter, the department shall make reasonable efforts to preserve and reunify families as follows:
>
> * * * * *
>
>> (2) If a child has been removed from the child's home, to make it possible for the child to return safely to the child's home as soon as possible.

---

[4] Indiana Code section 31-34-21-5.6 lists circumstances – including a parent's conviction of certain crimes, prior termination proceedings, and abandonment of an infant – under which DCS is not required to comply with Indiana Code section 31-34-21-5.5. Neither party asserts one of those circumstances occurred in the instant case.

Ind. Code § 31-34-21-5.5(b) (footnote added).

As an initial matter, we note Father did not raise this issue before the trial court, and thus the issue is waived. *See McBride v. Monroe Cty. Office of Family & Children*, 798 N.E.2d 185, 194 (Ind. Ct. App. 2003) (parties cannot raise issue for the first time before the appellate court, including some constitutional issues). Waiver notwithstanding, "failure to provide services does not serve as a basis on which to directly attack a termination order as contrary to law." *In re H.L.*, 915 N.E.2d 145, 148 n.3 (Ind. Ct. App. 2009). Additionally, DCS is not required to offer reunification services or visitation while a parent is incarcerated. *See Rowlett v. Vanderburgh County OFC*, 841 N.E.2d 615, 622 (Ind. Ct. App. 2006) ("[T]he OFC did not, nor was it required to, provide Father with services directed at reuniting him with his children."), *trans. denied*. Based thereon, we conclude Father's due process rights were not violated by DCS's failure to provide him reunification services.

## Conclusion

Because DCS was not required to provide Father with reunification services or visitation prior to the involuntary termination of his parental rights to Child, his due process rights were not violated. Accordingly, we affirm.

Affirmed.

Riley, J., and Mathias, J., concur.