## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 26 2018, 5:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Joann M. Price
Merrillville, Indiana

ATTORNEYS FOR APPELLEE
INDIANA DEPARTMENT OF
CHILD SERVICES

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE LAKE
COUNTY COURT APPOINTED
SPECIAL ADVOCATE

Donald W. Wruck
Wruck Paupore PC
Dyer, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Termination of the Parent–Child Relationship of:
X.S. (Minor Child),

and

S.S. (Father),

*Appellant-Respondent,*

December 26, 2018

Court of Appeals Case No.
18A-JT-1198

Appeal from the Lake Superior
Court

The Hon. Thomas P. Stefaniak, Jr., Judge

|  | Trial Court Cause No. |
| v. | 45D06-1710-JT-260 |

The Indiana Department of
Child Services,

*Appellee-Petitioner*,

　　and

Lake County Court Appointed
Special Advocate,

*Appellee*.

**Bradford, Judge.**

# Case Summary

S.S. ("Father") challenges the termination of his parental rights in X.S. ("Child"), claiming that the juvenile court violated his due process right to counsel by conducting a termination hearing at which he did not appear and was not represented by counsel. The Indiana Department of Child Services ("DCS") agrees with Father and requests that we reverse the judgment of the juvenile court and remand for the appointment of counsel and a new hearing. The Lake County court appointed special advocate ("CASA"), however, contends that Father's due process rights were not violated because he was given the opportunity to obtain counsel and meaningfully participate in the termination hearing but did nothing to take advantage of that opportunity. Because we agree with the CASA, we affirm.

# Facts and Procedural History

[2] On July 21, 2016, DCS petitioned to have Child declared a child in need of services ("CHINS"). On October 18, 2016, the juvenile court found Child to be a CHINS. Other than appearing at the initial hearing, Father did not participate in the CHINS proceeding, and DCS found it increasingly difficult to maintain contact with him. In early May of 2017, DCS learned that Father was incarcerated in the Lake County jail. On May 5, 2017, Family Case Manager Dylan Sheets ("FCM Sheets") visited Father in jail and reported that he "still wants to be in [Child's] life and wants to do whatever he [can] to get him back." Ex. Vol. p. 62. On August 4, 2017, Father pled guilty to a burglary charge and, on October 6, 2017, was sentenced to three years of incarceration, to be served at Westville Correctional Facility.

[3] On October 24, 2017, DCS petitioned to terminate Father's parental rights in Child. On January 25, 2018, FCM Sheets spoke with Father and later testified about the conversation:

> [A]fter I spoke with him on the 25th, I explained to him that we're proceeding forward with the termination of parental rights and there's a few things that he would need to be doing in order to attend those hearings, be represented. So, I wrote him a letter on January 30th, very much detailing everything he needed to do in regards to requesting transportation. And requesting a public defender at the time of the fact finding hearing for termination. He was made aware of this over the phone and said that he wanted to participate. Well, we're now in April and he hasn't. Whenever speaking to him[, ]I spoke with [Father] three times throughout the duration of this case, he always makes it aware [*sic*] that he wants to participate, but he never follows through

with any of the court ordered services, things that he would need to do to, in order to reunify with [Child].

Tr. p. 13.

[4] An alias summons was issued to Father by the clerk of the juvenile court on March 7, 2018, and directed to him in prison. The summons provided, in part, as follows:

> **YOU ARE HEREBY NOTIFIED** that a Petition for the Involuntary Termination of Parental Rights of the above name[d] child, a copy of which is attached hereto, has been filed in the above named Court.
>
> **YOU ARE HEREBY NOTIFIED AND COMMANDED TO APPEAR** before the Judge of the Lake Superior Court, 3000 W. 93rd Avenue, Crown Point, IN 46307, 219-660-6900 for a(n) **Factfinding Hearing on 4/12/2018 at 8:30 AM** on the petition for termination of parental rights.
>
> **YOU ARE FURTHER NOTIFIED** that if the allegations of the petition are found to be true and/or you fail to appear at the hearing[], the Court may terminate the parent–child relationship; and if the Court terminates the parent–child relationship, you will lose all parental rights, powers, privileges, immunities, duties, obligations[,] including any rights to custody, control, visitation, or support of the child; and if the Court terminates your parent–child relationship, it will be permanently terminated, and thereafter you may not contest an adoption or other placement of said child, and
>
> **YOU ARE ENTITLED TO REPRESENTATION BY AN ATTORNEY**, provided by the State if necessary, throughout these proceedings to terminate the parent–child relationship.
>
> **If this SUMMONS is duly served upon you and you fail to appear for the INITIAL and/or FACT FINDING HEARING,**

> **adjudication on said petition and termination of your parental rights may be entered against you without further notice.**

CASA's App. p. 3 (emphases in original). Father was personally served with the summons on March 12, 2018, when it was hand-delivered to him by a prison official. In a report filed March 22, 2018, DCS indicated that Father had not yet requested "transportation and a public defender." Ex. Vol. p. 88. In the end, Father would make no request for counsel or transportation and no other attempt to participate in the termination proceedings.

[5]     On April 12, 2018, a termination hearing was held at which Father failed to appear personally or by counsel, after which the juvenile court ordered that Father's parental rights in Child be terminated. The juvenile court's order provided, in part, as follows:

> [DCS's] case manager spoke with [Father] in May 2017. At that time, he indicated he was not able to care for the child due to incarceration in jail but that he wanted to be a part of [Child's] life. He did nothing to participate, to follow up, or to assert his rights. He made similar comments when [FCM Sheets] telephoned him in Westville on January 30[1], 2018. Despite these comments, Father has never made any efforts to be a part of the child's life after [DCS] became involved on July 21, 2016. He has not contacted [FCM Sheets].
>
> During that January 30, 2018 telephone conversation, [FCM Sheets] discussed these termination proceedings in detail with Father. They discussed what Father needed to do to assert his rights. Father has done nothing. He has never followed up in

---

[1] Although the juvenile court's order indicates that FCM Sheets spoke with Father on the telephone on January 30, 2018, FCM Sheets's testimony is clear that the telephone conversation occurred on January 25 and that a letter was sent on January 30, also providing instructions on how to obtain counsel, etc.

> writing to the court and he has never attempted to assert his
> rights. He did not request the appointment of counsel.

Appellant's App. p. 3.

# Discussion and Decision

## Whether Father Was Denied Due Process

[6] The traditional right of a parent to establish a home and raise his children is protected by the Fourteenth Amendment to the United States Constitution. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We acknowledge that the parent–child relationship is "one of the most valued relationships of our culture." *Id.* (citation omitted). However, parental rights are not absolute, and the law allows for the termination of such rights when a parent is unable or unwilling to meet his responsibilities as a parent. *In re T.F.*, 743 N.E.2d 766, 773 (Ind. Ct. App. 2001), *trans. denied*. The purpose of terminating parental rights is to protect the child, not to punish the parent. *Id.*

[7] While remaining mindful of the above, we have long had a highly deferential standard of review in cases concerning the termination of parental rights. *In re K.S.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). "In determining whether the evidence is sufficient to support the judgment terminating parental rights, this court neither reweighs the evidence nor judges the credibility of witnesses." *Id.* "We consider only the evidence that supports the judgment and the reasonable inferences to be drawn there from." *Id.* "Findings of fact are clearly erroneous only when the record lacks any evidence or reasonable inferences to support them." *Id.* Father does not contend that DCS failed to present evidence

sufficient to sustain the trial court's termination of his parental rights in Child. As restated, Father contends that he was denied the process due to him in a termination proceeding, namely, that he was effectively denied the statutory right to counsel.

[8] Indiana Code section 31-32-2-5 provides that "[a] parent is entitled to representation by counsel in proceedings to terminate the parent–child relationship." Moreover,

> [i]f:
>> (1) a parent in proceedings to terminate the parent–child relationship does not have an attorney who may represent the parent without a conflict of interest; and
>> (2) the parent has not lawfully waived the parent's right to counsel under IC 31-32-5 (or IC 31-6-7-3 before its repeal);
> the juvenile court shall appoint counsel for the parent at the initial hearing or at any earlier time.

Ind. Code § 31-32-4-3(a). However, "[a] parent who is entitled to representation by counsel may waive that right if the parent does so knowingly and voluntarily." Ind. Code § 31-32-5-5.

## A. Notice

[9] As an initial matter, Father contends that DCS failed to produce sufficient evidence to establish that he was ever even informed of his right to counsel. DCS, however, produced evidence that FCM Sheets told Father of this right over the telephone and detailed it in a letter sent a few days later and that the juvenile court informed him in an alias summons. Father denies only that he received the letter from FCM Sheets, failing to address the telephone call from

FCM Sheets or the alias summons in his argument. We take these omissions as admissions that the telephone call occurred and that Father actually received the summons, both of which informed him of his right to counsel. So, even if we assume the Father did not receive the letter (which we do not), we conclude that the evidence is still more than sufficient to support a finding that Father was informed of his right to counsel. To the extent that Father asks us to find that he did not receive the letter from FCM Sheets, this is an invitation to reweigh the evidence, which we will not do.

[10] That said, on a somewhat related matter, one of the bases of DCS's desire to concede this appeal is the lack of any indication that DCS sent Father notice of the termination hearing pursuant to Indiana Code section 31-35-2-6.5. Father himself does not make this claim, but even if we assume that DCS failed to properly notify Father pursuant to the statute, we conclude that such a failure does not require reversal under the circumstances of this case, even though it might in other cases. To get straight to the point, there is sufficient evidence to establish that Father had actual notice of the termination hearing *via* the personally-served summons issued by the juvenile court. Consequently, Father has failed to establish that he suffered any prejudice as a result of any failure by DCS to properly notify him of the hearing. *See In re T.W.*, 831 N.E.2d 1242, 1247 (Ind. Ct. App. 2005) (in termination-of-parental-rights case, concluding that, even if notice was defective, there was no due process violation where the record established that the mother had actual notice of the termination hearing).

## B. Waiver

Finally, Father contends that, even if one assumes that he was given proper notice of his right to counsel, it was denied without a valid waiver. In other words, Father contends that he was denied counsel without due process. When the State seeks to terminate the parent–child relationship, it must do so in a manner that meets the requirements of due process. *Lawson v. Marion Cty. Office of Family & Children*, 835 N.E.2d 577, 579 (Ind. Ct. App. 2005). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Thompson v. Clark Cty. Div. of Family & Children*, 791 N.E.2d 792, 795 (Ind. Ct. App. 2003) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)), *trans. denied*.

The question, then, is whether the procedures used in this case were sufficient to provide a parent with the process due to him in a termination proceeding. The Indiana Supreme Court has held "that the process due in a termination of parental rights action turns on balancing three *Mathews* factors: (1) the private interests affected by the proceeding; (2) the risk of error created by the State's chosen procedure; and (3) the countervailing governmental interest supporting use of the challenged procedure." *In re K.D.*, 962 N.E.2d 1249, 1257 (Ind. 2012). "The balancing of these factors recognizes that although due process is not dependent on the underlying facts of a particular case, it is nevertheless 'flexible and calls for such procedural protections as the particular situation demands.'" *Thompson*, 791 N.E.2d at 795 (quoting *Mathews*, 424 U.S. at 334).

### 1. Private Interests

The private interests affected the most in any termination proceeding are obviously those of the parent and the child. We have already noted the value our society places on the parent–child relationship, and while we acknowledge that "a parent's interest in the accuracy and justice of the decision [in a termination proceeding] is commanding[,]" *id.*, that interest is not as compelling as it would be in a criminal proceeding, where the potential for loss of life or liberty is very often at stake. That said, the child's interest in being raised in a safe, nurturing, and stable environment is also very compelling. As mentioned, the point of termination is to protect the child, not punish the parent, and where a parent is unwilling or unable to properly raise a child, the parent's parental interests must give way. Moreover, "the speedy resolution of termination and adoption proceedings [is] in the best interests of the child." *K.S. v. Marion Cty. Dep't of Child Servs.*, 917 N.E.2d 158, 165 (Ind. Ct. App. 2009). Although it is impossible to assign specific weights to the interests of the parent and the child in a termination proceeding, suffice it to say that the parent's interests do not outweigh the child's interests to such a degree that extraordinary measures are warranted to protect the former at the expense of the latter.

### 2. Risk of Error

In our view, the procedure used in this case was unlikely to have produced the error of denying representation to a parent who wished to exercise that right. The FCM went to some lengths to find Father and communicate with him

regarding his right to counsel and how to obtain it, speaking with him on the telephone and mailing him the materials he needed to obtain counsel. Moreover, the alias summons issued by the juvenile court reminded Father that he had the right to counsel, which was to be appointed at State expense, if necessary. Even though apparently all Father had to do to obtain counsel was make a telephone call, there is no indication that he ever even tried. DCS and the juvenile court's general approach, involving notification and instructions, etc., is unlikely to result in the erroneous denial of representation to a parent who genuinely wishes to have it.

[15] Moreover, even if a wrongful denial of counsel were to occur, the inherent nature of termination proceedings is such that the risk of erroneous disposition due to lack of representation is much lower than in most other legal proceedings. The Indiana Supreme Court has recognized this, adopting the following passage from an opinion of the Pennsylvania Superior Court:

> [B]ecause of the doctrine of Parens Patriae and the need to focus on the best interest of the child, the trial judge, who is the fact finder, is required to be an attentive and involved participant in the process. While he must depend upon the litigants to present the evidence to establish the particular elements or defenses in the termination case, he is not limited to their presentations, and as in any custody case, he may require more than they present and direct further investigation, evaluations or expert testimony to assure him that the interests of the child and the respective parties are properly represented. Under the aegis of the court, the role of the lawyer, while important, does not carry the deleterious impact of ineffectiveness that may occur in criminal proceedings.

*Baker v. Marion Cty. Office of Family & Children*, 810 N.E.2d 1035, 1041 (Ind. 2004) (*quoting In re Adoption of T.M.F.*, 573 A.2d 1035, 1042–43 (Pa. Super. Ct. 1990), *appeal denied*). In other words, the juvenile court is looking out for the parent's interests in a termination proceeding even if an attorney is not. The low risk of error also weighs against requiring a more involved procedure for determining waiver, such as would generally be required in a more adversarial proceeding.

### 3. Governmental Interest

[16] Finally, we note the State's significant interest in the speedy, efficient, and cost-effective resolution of termination proceedings:

> The State has a significant *parens patriae* interest in protecting the welfare of the children involved. *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599. Although the State does not gain when it separates children from the custody of fit parents, *id.*, the State has a "compelling interest in protecting the welfare of the child by intervening in the parent–child relationship when parental neglect, abuse, or abandonment are at issue." *E.P. v. Marion County Office of Family & Children*, 653 N.E.2d at 1032. Delays in the adjudication of a case impose significant costs upon the functions of government as well an intangible cost to the lives of the children involved. *See In re M.R.*, 316 Ill. App. 3d 399, 249 Ill. Dec. 325, 736 N.E.2d 167 (2000), *appeal denied*.

*J.T. v. Marion Cty. Office of Family & Children*, 740 N.E.2d 1261, 1264 (Ind. Ct. App. 2000), *trans. denied*, *abrogated on other grounds by Baker*, 810 N.E.2d at 1041. It seems to us that the procedure used in this case adequately informed Father

of his right to counsel without incurring significant costs or causing undue delay.[2] The interests of the State are served by the procedure used in this case.

### 4. Balancing

[17] We conclude that a balancing of the *Mathews* factors does not require more process in termination proceedings than Father was given in this case. Father was informed on multiple occasions of the right to counsel, and if he wanted counsel, all he would have had to do was make a telephone call. We do not believe that this is too much to ask of a parent in a termination proceeding. Moreover, there is a greatly reduced risk of error in termination proceedings, even without counsel, which also weighs against a more burdensome procedure. Finally, the interests of Child and the State in a speedy resolution are well-served by the procedure used in this case. A more involved process would, in our view, not do much to advance Father's interests while very possibly negatively affecting the interests of Child and the State through delay and unnecessary commitment of resources. In summary, we conclude that the procedure used in this case provided Father with "the opportunity to be heard

---

[2] In contrast, the use of a procedure like that typically used in criminal cases (requiring that the trial court generate a record and thoroughly investigate a request to waive counsel) could be quite expensive and time-consuming, especially in cases like this one, where transportation from a correctional facility to a waiver hearing would likely have to be arranged.

at a meaningful time and in a meaningful manner." *Thompson*, 791 N.E.2d at 795. Father has failed to establish that his due process rights were violated.[3]

[18]     We affirm the judgment of the juvenile court.

Bailey, J., concurs.

Mathias, J, dissents with opinion.

---

[3] The dissent points to indications in the record that Father was denied counsel at the initial hearing in the CHINS proceeding that came before this termination, despite requesting it. Although Father does not make this argument, we acknowledge that "procedural irregularities in a CHINS proceedings may be of such import that they deprive a parent of procedural due process with respect to the termination of his or her parental rights." *A.P. v. Porter Cty. Office of Family & Children*, 734 N.E.2d 1107, 1112–13 (Ind. Ct. App. 2000), *trans. denied*. In *A.P.*, the following errors occurred and were found to require reversal:

> (1) the [Porter County Office of Family and Children] admittedly failed to provide Brenda and Elvis with copies of at least some, and possibly all, of A.P.'s case plans as required by Indiana Code Chapter 31-34-15; (2) the termination petition filed in this cause did not comport with the requirements of Indiana Code Section 31-35-2-4; (3) the original underlying CHINS petition filed with respect to A.P. was unsigned and unverified in violation of Indiana Code Section 31-34-9-3; (4) no permanency hearing was ever held as required by Indiana Code Section 31-34-21-7; (5) the original CHINS dispositional order, the modification of that order providing for A.P.'s out-of-home placement, and every other order entered by the trial court, with the exception of the termination judgment, contained no written findings and conclusions upon the record concerning its reasons for those dispositions as required by Indiana Code Section 31-34-19-10; (6) the trial court entered a no-contact order against Elvis without following the statutory prerequisites for entry of such an order as contained in Indiana Code Chapter 31-34-17 [now repealed]; and (7) Elvis was deprived, on at least two occasions, of his right to be present at review hearings in A.P.'s CHINS case in violation of Indiana Code Section 31-34-21-4(b).

*Id.* at 1117. This case, however, is a far cry from *A.P.* Even if we assume that Father did request counsel in the CHINS case and was denied, this does not approach the wholesale violations in *A.P.* More importantly, the dissent points to no indication that any denial of counsel in the CHINS case prejudiced Father, much less in any way that carried over into the termination. Put another way, whatever may have happened in the CHINS case, Father *was* advised multiple times of his right to counsel in *this* case.

**MEMORANDUM DECISION**

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Termination of the Parent–Child Relationship of X.S. (Minor Child), | Court of Appeals Case No. 18A-JT-1198 |
| and | |
| S.S. (Father), | |
| *Appellant-Respondent,* | |
| v. | |
| Indiana Department of Child Services, | |
| *Appellee-Petitioner,* | |
| and | |
| Lake County Court Appointed Special Advocate, | |
| *Appellee.* | |

**Mathias, Judge, dissenting.**

I respectfully dissent because I do not believe Father was provided with notice that meets the requirements of due process. I also conclude that Father did not knowingly and voluntarily waive his right to counsel. These conclusions lead me to balance the *Mathews* factors differently than my colleagues. As the State may only undertake the extreme measure of terminating a parent's rights in a manner that comports with the standards of due process, and these standards have not been met, I believe a remand is required.

## Standard of Review

The majority correctly notes that we have long had a highly deferential standard of review in cases concerning the termination of parental rights. *In re K.S.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). However, whether a party was denied due process is a question of law that we review *de novo*. *Wolf Lake Pub, Inc. v. Review Bd. Of Ind. Dep't of Workforce Dev.*, 930 N.E.2d 1138, 1141 (Ind. Ct. App. 2010) (citing *Miller v. Ind. Dep't of Workforce Dev.*, 878 N.E. 2d 346, 351 (Ind. Ct. App. 2007)). While due process is not dependent on the underlying facts of the particular case, it is nevertheless "flexible and calls for such procedural protections as the particular situation demands." *Thompson v. Clark Cty. Div. of Family & Children,* 791 N.E.2d 792, 795 (citing *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976)).

# Discussion and Analysis

## Notice

*Service of the Alias Summons*

The "affidavit" filed by DCS regarding service upon Father shows the alias summons was not served in compliance with the Indiana Rules of Trial Procedure. In addition, the same document does not contain sufficient indicia of reliability required by the Rules of Evidence.

Indiana Trial Rule 4.3 governs service of summons upon institutionalized persons. It provides:

> Service of summons upon a person who is imprisoned or restrained in an institution shall be made by delivering or mailing a copy of the summons and complaint to the official in charge of the institution. It shall be the duty of said official to immediately deliver the summons and complaint to the person being served and allow him to make provisions for adequate representation by counsel. The official shall indicate upon the return whether the person has received the summons and been allowed an opportunity to retain counsel.

"A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Ind. Evidence Rule 602. Unsigned affidavits do not constitute admissible evidence. T.R. 11(B); *In re Paternity of P.W.J.*, 846 N.E.2d 752, 757–58 (Ind. Ct. App. 2006).

[23] The document entitled "Affidavit of Service" purports to show that a process server delivered an Alias TPR Summons and corresponding documents to Father at Westville Correctional Center, where he was incarcerated.[4] This document provides that:

> I, J. Michael Jenkins, being duly sworn, depose, and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein.

DCS App. p. 3.

[24] In the "Additional Comments" section of the document, a notation provides: "1) Successful Attempt: Mar 12, 2018, 1:19 pm CDT at Westville Correctional Center: 5501 S. 1100 W, Westville IN 46391 received by Shawn Staggs. Other: Defendant was served by WCC Investigator Christine Kallok." The CCS shows this "Affidavit of Service" was filed by DCS on March 15, 2018. No signature is affixed to this "Affidavit of Service."

[25] The defects in service of the alias summons are abundant. First, this "Affidavit of Service" is unsigned and therefore inadmissible evidence. Secondly, the notation in the "Additional Comments" section shows that even if Mr. Jenkins had signed the affidavit, whether Father received the summons was outside of

---

[4] The packet also included a Notice of Hearing, Notice of Possible Default Judgment, and the Verified Petition to Terminate.

his personal knowledge as it was purportedly delivered to Father by an investigator employed by the prison. Moreover, the statement from a prison official that the recipient has also been allowed an opportunity to retain counsel required by T.R. 4.3 is not contained in the record. In order to prove service of this summons, an executed affidavit of service from the individual who actually delivered the summons to Father and an indication from a prison official that Father was provided with an opportunity to retain counsel is required. The record contains neither.

*Father's Communications with the FCM*

The CASA argues, and the majority agrees, that the FCM's telephone conversation and letter he sent to Father were sufficient to provide notice of the termination.

The FCM's testimony shows that he had a telephone conversation with Father. In this conversation, he advised him that DCS intended to proceed to termination. Father indicated to him during their phone conversation that he wanted to participate. The FCM also testified that he sent him a letter detailing "everything he needed to do in regards to requesting transportation. And requesting a public defender at the time of the fact[-]finding hearing for termination." Tr. p. 13. He further testified that every time he spoke with him throughout the duration of his case, Father "always makes it [sic] aware that he wants to participate," but he never followed through. *Id.*

The letter FCM testifies that he sent is not in the record, and we are unaware of its specific contents. We have no indication that Father actually received this letter, or that the FCM was able to accurately advise him of the processes and procedures required for him to take the actions within his prison and within the juvenile court system.

## Right to Counsel

A parent is entitled to representation by counsel in proceedings to terminate the parent–child relationship. Ind. Code §§ 31-32-4-1 and 31-32-2-5. Indiana Code "[s]ection 31-34-4-6 is an explicit provision of just such a statutory right, though subject to its own internal qualifications, and is consistent with the operation of the rest of the statutory scheme. And it exists independently of – though informed and influenced heavily by – any constitutionally compelled right to counsel pursuant to the Due Process Clause of the Fourteenth Amendment." *In re G.P.*, 4 N.E.3d 1158, 1163 (Ind. 2014). Indiana Code section 31-32-4-3 provides:

(a) If:

(1) a parent in proceedings to terminate the parent–child relationship does not have an attorney who may represent the parent without a conflict of interest; and

(2) the parent has not lawfully waived the parent's right to counsel under IC 31-32-5 (or IC 31-6-7-3 before its repeal); *the juvenile court shall appoint counsel for the parent at the initial hearing or at any earlier time.*

> (b)  The court may appoint counsel to represent any parent in any other proceeding.

Ind. Code § 31-32-4-3 (emphasis added).

[30]  Although the termination statute provides that a parent is entitled to appointed counsel in a termination proceeding, the case law indicates that a parent's indigency is a prerequisite to having the court appoint counsel. "A parent who is entitled to representation by counsel may waive that right if the parent does so *knowingly and voluntarily*." Ind. Code § 31-32-5-5 (emphasis added). Similarly, a parent has a right to counsel in a CHINS proceeding. Ind. Code § 31-34-4-6(a)(2); *In re G.P.*, 4 N.E.3d at 1163. And, as the Indiana Supreme Court has stated, *Mathews* analysis aside, "if the State imparts a due process right, then it must give that right." *In re G.P.*, 4 N.E.3d at 1166 ("So if a parent were deprived of representation by counsel at a TPR proceeding, for example, the deprivation would constitute a failure to afford that parent the process to which the General Assembly says he or she is due.").

[31]  While CHINS and TPR are distinct proceedings, the results of a CHINS proceeding has obvious consequences for the TPR proceeding. *In re E.P.,* 653 N.E.2d 1026, 1032 (Ind. Ct. App. 1995); *In re G.P.*, 4 N.E.3d at 1166 ("In their most typical arrangement, CHINS, TPR, and adoption proceedings line up somewhat like dominoes; although one proceeding may not necessarily tip over into the next, neither can it usually fall without being pushed by the proceeding before it."); *A.P. v. Porter County Office of Family and Children*, 734 N.E.2d 1107, 1112–13 (Ind. Ct. App. 2000) ("procedural irregularities in a CHINS

proceedings [sic] may be of such import that they deprive a parent of procedural due process with respect to the termination of his or her parental rights."), *trans. denied.* However, a parent's right to counsel is even greater in a termination proceeding than in a CHINS proceeding. *See Smith v. Marion Cty. Dep't of Pub. Welfare*, 635 N.E.2d 1144, 1148 (Ind. Ct. App. 1994) (holding that because a parent's rights are not terminated in a CHINS proceeding, parents do not have the same statutory right to counsel that they have in termination hearings), *trans. denied*. A litigant who has been told that they would receive appointed counsel is not required to continually re-request counsel at each and every hearing where an attorney is not provided. *In re G.P.*, 4 N.E.3d at 1164.

[32] Here, in the CHINS proceeding, the order on the initial detention hearing, dated July 22, 2016, shows that Father denied the allegations in the CHINS petition. The order then states, "[b]eing advised of the right to Counsel the Father does request an Attorney."[5] Ex. Vol., State's Ex. C. This order does not indicate whether Father's request for counsel was granted or denied, or whether the trial court made any inquiry into indigency. And in this same order, a public defender was discharged. The CCS for the CHINS matter does not show an appearance for Father by any attorney. Because the termination proceedings are often necessarily dependent upon and inextricably intertwined with the

---

[5] DCS also provides citation to this order on page 5 of its brief. However, DCS misquotes the order, stating "[t]he next day, on July 22, 2016, Father attended the detention hearing, and after being advised of his rights, he 'did not request an attorney.'" DCS Brief p. 5. The order clearly states that Father did indeed request an attorney.

results of CHINS proceedings, I cannot dismiss the unexplained failure to appoint counsel at the initial detention hearing as immaterial.

[33] Turning to the termination proceeding, as previously discussed herein, the record contains no reliable indication that Father received the alias summons that contained the advisory regarding his right to counsel. As such, we have no reliable proof that he was advised to his right to counsel in the termination proceedings. We only have testimony from the FCM that he told him how to request counsel and that Father had indicated to him that he wanted to participate in the proceedings.

[34] Existing Indiana case law does not address whether advice of a right to counsel by an FCM alone, outside the presence of the court, is sufficient to determine that a parent has knowingly and voluntarily waived his or her right to counsel in a termination proceeding. As previously discussed, the letter the FCM allegedly sent is not before us, there is no proof that Father received the letter, and we have no way of knowing the specific contents of the letter. Moreover, even if he received the letter, this fact, without more, does not constitute a knowing and voluntary waiver of his right to counsel.

### *Mathews* Balancing

[35] Having concluded that proper notice in accordance with the trial rules was not provided and the record contains no evidence of a knowing and voluntary waiver of the right to counsel, I balance the *Mathews* factors differently than my colleagues.

*A. Private Interests*

[36] The private interests in this matter are substantial for both the parent and the child. The care, custody, and control of one's children is "perhaps the oldest of the fundamental liberty interests[.]" *Troxel v. Granville*, 530 U.S. 57, 65 (2000). It is well settled that the right to raise one's children is an essential, basic right that is more precious than property rights. *In re M.G.S.*, 756 N.E.2d 990, 1005. Parental rights constitute an important interest warranting deference and protection, and a termination of that interest is a "unique kind of deprivation." *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 27 (1981).

[37] However, children have an interest in finality. *Lehman v. Lycoming Cty. Children's Servs. Agency*, 458 U.S. 502, 513 (1982). "[A] trial court need not wait until a child is irreversibly influenced by a deficient lifestyle such that [his or] her physical, mental, and social growth is permanently impaired before terminating the parent–child relationship." *In re E.S.*, 762 N.E.2d 1287, 1290 (Ind. Ct. App. 2002).

[38] A child also has an interest in a judicially efficient determination. See *Lehman*, 458 U.S. at 513. "It is undisputed that children require secure, stable, long-term, continuous relationships with their parents or foster parents. There is little that can be as detrimental to a child's sound development as uncertainty[.]" *Id.* While always significant, a child's concern for delay becomes less commanding when the record shows placement in a stable, positive foster home. *See In re G.Y.*, 904 N.E.2d 1257, 1265 (Ind. 2009) ("Particularly given the highly positive reports about the quality of the placement here, we are unable to conclude that

the continuation of the CHINS foster care arrangement here will have much, if any, negative impact on G.Y.'s well-being.") Additionally, parental rights should not be terminated simply because there is a better home available. *In re K.S.*, 750 N.E.2d at 837 (citing *In re V.A.*, 632 N.E.2d 752, 756 (Ind. Ct. App. 1994)).

*Risk of Error*

[39] Our supreme court has stated:

> proceedings in which the State seeks to regulate or terminate a parent's relationship with his or her children are among the most delicate and difficult that judicial officers and attorneys must face. And we have repeatedly emphasized the importance of caution and care in these sorts of cases — from all involved — as the repercussions that flow from them can be devastating to every member of a family.

*In re K.W.*, 12 N.E.3d 241, 242–43 (Ind. 2014). A parent's interest in the accuracy and justice of the decision to terminate his parental rights is commanding. *In re V.A.*, 51 N.E.3d 1140, 1144 (Ind. 2016) (citing *Santosky v. Kramer*, 455 U.S. 745, 749 (1982).

*Governmental Interest*

[40] I agree with the majority that the State's interests are in the speedy, efficient, and cost-effective resolution of termination proceedings, as well as its *parens patriae* interest in protecting the interest of the child. *J.T. v. Marion Cty. Office of Family & Children*, 740 N.E.2d 1261, 1264 (Ind. Ct. App. 2000), *trans denied,*

*abrogated on other grounds by Baker v. Marion Cty. Office of Family & Children*, 810 N.E.2d 1035 (Ind. 2004).

*Balancing*

[41]  Here, the record demonstrates an overall lack of care and caution required in these proceedings. The Indiana Rules of the Trial Procedure and the Indiana Rules of Evidence are based on long-standing principles designed to ensure reliability and accuracy in legal proceedings. Constitutional law jurisprudence firmly establishes that the rights that attach to family members within termination proceedings are among the most fundamental.

[42]  I believe the high risk of error in the chosen procedures at issue here require remand. Father was not provided counsel when he requested counsel at the initial detention hearing when DCS first alleged CHINS. Nor is there reliable proof that Father knowingly and voluntarily waived his right to counsel in the termination proceeding. Moreover, he indicated his desire to participate to the FCM.

[43]  When the court proceeded to termination, there is no reliable proof of notice of the fact-finding hearing. Significant and blatant procedural service errors were blankly accepted by the trial court, which, as the majority relays, is "required to be an attentive and involved participant in the process" for the purpose of protecting the rights of all parties. *See Baker*, 810 N.E.2d at 1041 (quoting *In re Adoption of T.M.F.*, 573 A.2d 1035, 1042 (Pa. Super. Ct. 1990), *appeal denied.*

While delay, especially preventable delay, in the legal process and therefore the permanency of any child who is the subject of a CHINS or TPR proceeding is concerning to me, given the positive reports of the current placement, the lack of any time-sensitive matters, and the young age of the child, I am unable to conclude that delay will have as significant of harm to the child as it might under other circumstances. [6]

## Conclusion

Insistence on reliable proof of service in compliance with the Indiana Rules of Trial Procedure and the Indiana Rules of Evidence are not extraordinary measures for the purposes of meeting the requirements of procedural due process. I also find no reliable evidence that Father knowingly and voluntarily waived his right to counsel. As such, I believe the requirements of due process require reversal and remand.

---

[6] With respect to the negative impact of additional delay, I also must note that, while I appreciate DCS's concern for judicial economy and Father's due process rights on appeal, I am left to wonder why DCS did not address these concerns to the trial court. The State acted against its own interests, and the interests of all parties involved, in the speedy, efficient, and cost-effective resolution of these important proceedings when DCS failed to address these defects at the trial court level. Not only is remedying these admitted procedural defects at the earliest opportunity in the best interest of judicial economy, it is in the best interest of the parent, the child, and the efficiency of DCS.